**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19-CV-00913-CHL**

**CHARLES OBLISK ,**                                                                    **Plaintiff,**

**v.**

**DUNCAN ENTERPRISES, INC., et al.,**                                      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Parties' cross motions for summary judgment. (DN 37, 40.) On September 1, 2020, Plaintiff Charles Oblisk ("Plaintiff") filed a motion for partial summary judgment in his favor as to the remaining claims in this case. (DN 37.) On September 22, 2020, Defendant Duncan Enterprises, Inc., doing business as Pegasus Transportation, Inc. ("Pegasus") and Defendant CRST International, Inc. ("CRST") (collectively "Defendants") filed a combined response in opposition to Plaintiff's motion and motion for summary judgment in their favor. (DN 40.) On September 25, 2020, Plaintiff filed a combined response opposing Defendants' motion and reply supporting his motion. (DN 42.) On October 8, 2020, Defendants filed a reply in support of their motion. Therefore, the motions are ripe for review.

**I.       BACKGROUND**

Pegasus is corporation whose services include shipping, transportation, and storage of commercial goods. (DN 1, at PageID # 3-4.) CRST is Pegasus's parent company and manages various administrative functions for Pegasus employees, including health insurance and Family & Medical Leave Act ("FMLA") benefits. (DN 37, at PageID # 168.) Plaintiff was employed by Pegasus as a semi-truck driver from 2016 to 2019. (DN 37, at PageID # 168.) During his

employment, Plaintiff was enrolled in Pegasus's health insurance program, a self-funded ERISA plan administered by a third-party insurer, Wellmark. (*Id.*, at PageID # 168-69.)

On June 3, 2018, Plaintiff was involved in a motorcycle accident which resulted in fractures to both of his arms that required emergency surgery. (*Id.*, at PageID # 169.) Plaintiff requested and was granted eight weeks of FMLA leave between June 3, 2018 and August 4, 2018 to allow for his recovery. (*Id.*) Plaintiff returned to work until later that year, when he learned that he needed a follow-up surgery to repair a cracked bone in his left arm. (*Id.*) He requested and was granted two weeks of FMLA leave between November 9, 2018 and November 25, 2018. (*Id.*) Plaintiff briefly returned to work, before learning that he needed a third surgery to replace his left elbow joint, which would require ten weeks of recovery time. (*Id.*) Plaintiff requested to use his two remaining weeks of FMLA leave beginning January 17, 2019 and to take unpaid leave for the remainder of his recovery. (*Id.*, at PageID # 169-70.) Pegasus signed off on the plan and CRST approved the FMLA request. (*Id.*, at PageID # 170.)

Following the third surgery, on March 28, 2019, Plaintiff's medical provider informed him that his Wellmark insurance policy had been terminated and that Wellmark rejected all of its claims submissions. (*Id.*) Plaintiff subsequently contacted CRST, which informed him that his employment had been terminated. (*Id.*) A clerical error in Pegasus's computer system caused Plaintiff's date of termination to be recorded as his last day of work in January 2019, which caused a lapse in his insurance coverage between January 2019 and his actual termination date in March 2019. (DN 40, at PageID # 202.)

On December 3, 2019, Plaintiff filed this action, alleging FMLA interference and retaliation. (DN 1.) In June 2020, the Parties reached an agreement through private mediation

which resolved all claims except those sought for reimbursement of Plaintiff's payment of three medical liens that remain in dispute. (DN 37, at PageID # 170-71.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the district court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341–42 (6th Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 342 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. DISCUSSION

Below the Court addresses each of the liens at issue.

### a. Veteran's Administration Lien

Plaintiff seeks payment for medical expenses incurred at the Veteran's Administration ("VA") between June 2018 and July 2019 totaling $15,042.26. (DN 37, at PageID # 172-74.) The Parties were not aware of the outstanding lien until after this action commenced; Plaintiff did not receive notice of the lien from the VA until April 8, 2020. (*Id.*, at PageID # 172.) Wellmark has refused coverage for these expenses because they were not submitted within 180 days of the date

of service as required by its policy.[1]  The Parties' briefs raise two issues concerning the VA lien: (1) whether Plaintiff is entitled to recover the amount paid for medical expenses incurred between June 2018 and October 2018; and (2) whether Plaintiff is entitled to recover the amount paid for for medical expenses incurred between April 2019 and July 2019.

### i.  Expenses Incurred Between June 2018 and October 2018

Pursuant to the Parties' settlement agreement, Defendants agreed to make reasonable efforts to secure coverage of these expenses by Wellmark.  (DN 40, at PageID # 203.)  Despite those efforts, Wellmark continues to refuse coverage. (*See* DN 37-4, at PageID # 191.)

Plaintiff argues that because "Defendants' insurance plan is a self-funded ERISA plan, they have stepped into the role of an insurer, and are therefore responsible for any outstanding medical bills the plan refuses to pay."  (DN 37, at PageID # 173.)  Plaintiff points to cases from the Fifth and Ninth Circuits that he interprets as holding that the employer is ultimately responsible for a beneficiary's medical bills when it uses a self-funded ERISA plan.  (*Id.*; DN 42, at PageID # 262-63.)  Plaintiff also points to a provision of the services agreement between CRST and Wellmark that states that "[CRST] is solely responsible for all capitation and claims paid for its members . . . regardless of plan limitations or exclusions."  (DN 37, at PageID # 173-74.)

Plaintiff then argues that Wellmark's 180-day deadline for claim submissions cannot shield Defendants from their obligation to pay because this limitation of coverage is "invalid and unenforceable" under Kentucky law.  (*Id.*, at PageID # 173.)  Plaintiff points to Kentucky's "notice-prejudice rule", which prevents insurers from denying claims based on the beneficiary or her provider failing to provide timely notice unless the insurer can demonstrate prejudice resulting

---

[1] "Wellmark must receive claims within 180 days following the date of service of the claim or if you have other coverage that has primary responsibility for payment then within 180 days of the date of the other carrier's explanation of benefits." (DN 37-5, at PageID # 192.)

from the late notice. (*Id.*) Plaintiff states that Defendants have not demonstrated prejudice and therefore cannot rely on the late submission to deny the claim. (*Id.*)

Defendants disputes the proposition that using a self-funded ERISA plan means that they are responsible for unpaid medical bills. (DN 40, at PageID # 204-05.) Defendants say that the case law cited by Plaintiff does not eliminate the distinction between the employer and the third-party administrator, but rather illustrates the basic principle that in a self-funded ERISA plan, the employer contributes funds, while the administrator maintains authority over interpreting the terms of the plan and making coverage decisions. (*Id.*, at PageID # 204-05; DN 43, at PageID # 269.) Defendants note that Plaintiff cites to no case law holding that employers must pay for medical expenses for which the insurer denied coverage, and argue that such a result would force it to bear the cost of coverage decisions it did not make. (DN 40, at PageID # 205; DN 43, at PageID # 269.)

Defendants further argue that even if it bears the risk of covering medical expenses that its third-party administrator refuses to pay, Plaintiff would not be entitled to payment because his claims were not timely submitted. (DN 37, at PageID # 205; DN 43, at PageID # 268-69.) Defendants do not believe that the notice-prejudice rule bars them from refusing to pay, because the rule applies to insurers and no court in the Sixth Circuit has ever applied the rule to employers using a self-funded ERISA plan. (DN 43, at PageID # 268-69.) Defendants assert that even if the notice-prejudice rule extends to employers, it would not prevent them from refusing to pay because the lack of timely notice does result in prejudice. (DN 40, at PageID # 205.) Defendants note that Plaintiff notified them of these expenses two years after the time of service and one year after Plaintiff's employment ended with no explanation as to why the claims were not timely submitted. (*Id.*) Defendants argue that requiring them to cover the expenses under these circumstances creates

uncertainty as to their financial obligations to former employees with aged claims and undermines its ability to allocate resources to current employees. (*Id.*, at PageID # 205-06.)

Plaintiff's claims for damages arise from alleged violations of the FMLA. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA] . . . [and] to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1)-(2). The FMLA provides a right of action to any employee affected by her employer's violation of the FMLA through which the employee is entitled to recover, among other things, "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). To establish a prima facie case of FMLA retaliation, Plaintiff must show that:

> (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

For an interference claim, a plaintiff must establish that:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005).

An employee may prove either FMLA interference or retaliation using the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792

6

(1973). *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014); *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). "[T]he employee has the initial burden of establishing his prima facie case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich*, 747 F.3d at 427.

The Court finds that as a matter of law, Plaintiff is not entitled to recover the medical expenses incurred from June 3, 2018 to October 27, 2018. While Plaintiff's multiple requests for FMLA leave were protected under the FMLA, Plaintiff has failed to meet his burden of showing a causal relationship between his lack of coverage for the Wellmark lien and any alleged retaliation or interference by Defendants. Plaintiff has presented no evidence connecting Wellmark's refusal to cover these claims to any alleged FMLA violation by Defendants. There is no evidence on record suggesting that Defendants did anything to influence Wellmark's decision to deny coverage and, in fact, it is undisputed that pursuant to the Parties' settlement agreement, Defendants made efforts to submit these claims to Wellmark and persuade Wellmark to designate them as covered. (*See* DN 37-4, at PageID # 191.) In fact, at the time of Defendants' alleged wrongful conduct— that is, terminating Plaintiff's employment—many of these claims were already barred by Wellmark's 180-day submission deadline. Based on the evidence Plaintiff presents, no reasonable juror could find that Plaintiff has established a *prima facie* case for FMLA retaliation.

On the other hand, there is sufficient undisputed evidence on the record to conclude that Wellmark's coverage decision as a matter of law did not arise out of any alleged FLMA violation by Defendants. It is undisputed that Plaintiff was insured during this period, that Wellmark's policy requires claims to be submitted within 180 days of service, that neither Plaintiff nor the VA

submitted these claims to Wellmark within 180 days of service, that Wellmark denied coverage for these claims because they were not submitted within 180 days of service, and that Defendants were not made aware of the denial of coverage until after litigation in this case commenced. (DN 37, at PageID # 172; DN 37-4, at PageID # 191.) A plaintiff can rebut the employer's proffered legitimate non-discriminatory reason by showing that it is pretextual. To establish pretext, a plaintiff can show that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the adverse action; or (3) were insufficient to explain the adverse action. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)). Plaintiff, however, provides no evidence creating an issue of fact as to whether the justification for the coverage denial was pretextual. It may very well be that there are legal grounds to challenge Wellmark's denial of coverage for late submission. However, under the causes of action Plaintiff has plead, Plaintiff is not entitled to recover these damages. Therefore, with respect to the $12,564.39 in medical expenses incurred between June 2018 and October 2018, the Court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## ii. Expenses Incurred Between April 2019 and July 2019

Defendants argue that they have no obligation to pay for the portion of the VA lien attributed to expenses incurred between April 2019 and July 2019 "[b]ecause Defendants did not employ Plaintiff when he incurred these expenses and he did not elect insurance continuation coverage." (DN 40, at PageID # 206.) In response, Plaintiff argues that if Defendants had not terminated his employment in violation of the FMLA, Plaintiff would have been insured during this period. (DN 42, at PageID # 264.) Plaintiff further argues that Defendants' actions prevented him from opting into continuation of coverage. (*Id.*) Plaintiff notes that he did not become aware

that his insurance benefits were terminated until March 28, 2021, two months after his coverage had lapsed. (*Id.*) Plaintiff says that he did not receive notice of his right to continue his Wellmark Plan under COBRA in April 2019, and that he was informed by Wellmark that "he would have to pay a nearly $8000 penalty if he wished to rejoin the plan at that point," which Plaintiff could not afford at the time. (*Id.*) Plaintiff argues that Defendants' failure to timely notify him of the termination of his insurance and his right of continuation caused him to continue his medical treatment without insurance. (*Id.*)

Replying to Plaintiff's claim that he would have remained employed and insured but for Defendants' alleged FMLA violations, Defendants state that "[the] parties have resolved Plaintiff's underlying claims without any admission of liability, so these allegations should not factor into the analysis." (DN 43, at PageID # 270.) Defendants do not address Plaintiff's arguments concerning Defendants' failure to timely notify Plaintiff of the termination of his insurance benefits and right to continuation.

The Court finds that genuine disputes of fact exist as to whether Plaintiff can recover the remaining $4,149.24 in VA expenses as damages to his FMLA claims. Counts I and II of Plaintiff's complaint allege that the adverse employment action constituting both retaliation and interference under the FMLA was "terminating Plaintiff's employment effective January 11, 2019." (DN 1, at PageID # 12-13.) Although post-employment damages in the form of front pay and back pay are available in FLMA claims, *Arban v. West Publishing Corp.*, 345 F.3d 390, 406 (6th Cir. 2003), Plaintiff has failed to meet his burden of establishing that he is entitled to compensation for these post-employment medical expenses as a matter of law.

Plaintiff asserts that his uninsured status resulted from three acts by Defendants, all of which Plaintiff characterizes as acts of retaliation: (1) terminating Plaintiff's employment; (2)

backdating the termination to January 11; and (3) failing to timely notify him of the termination of his benefits and his right to continuation. (DN 42, at PageID # 264.) The central issue raised by the retaliation theory of FMLA liability is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir.2006) (citation and internal quotation marks omitted). Plaintiff provides no evidence that these actions resulted from Defendants' discriminatory intent. In fact, Plaintiff provides little to substantiate these facts at all. Indeed, the portion of Plaintiff's brief that alleges that his lack of coverage during the relevant period arose from Defendants' actions does not cite to any evidence in the record. Plaintiff did not, for example, submit with his brief a sworn affidavit attesting to the facts alleged in his brief. Even if he did, several of the facts are disputed. For example, while Plaintiff claims he "was terminated in retaliation for asserting his FLMA rights," (DN 42, at PageID # 264), Defendant states that there has not been "any admission of liability." (DN 43, at PageID # 270.) Additionally, Defendant disputes that backdating Plaintiff's date of termination was retaliatory in stating that the retroactive termination of his insurance benefits was "[d]ue to a clerical error." (DN 40, at PageID # 203.) Because of these disputes of material fact, Plaintiff has failed to meet his burden that he entitled to recovery as a matter of law.

For their part, Defendants also fell short of their burden on their motion for summary judgment to establish as a matter of law that Plaintiff is not entitled to recover the costs of these expenses. Defendants offer no evidence that Plaintiff's lack of coverage during the period between April 2019 and July 2019 did not arise out of an alleged FLMA violation. While Defendants proffer that the reason Plaintiff was prematurely deprived of his insurance coverage was a clerical error, (*id.*), they do not offer any evidence to support that claim. Finally, Defendants offer nothing to dispute Plaintiff's assertion that they failed to timely notify him of his right of continuance, nor

do they offer evidence of a legitimate, nondiscriminatory reason why they failed to do so. Additionally, Defendants cite to no case or statutory law establishing that these expenses are not recoverable as front pay damages under the FLMA. *See Arban*, 345 F.3d at 406. Thus, although the record is sparse, a reasonable jury could still find that Plaintiff is entitled to recover the amount of the expenses incurred between April 2019 and July 2019. Therefore, the Court will deny Plaintiff's and Defendants' motion for summary judgment with respect to the remaining $4,149.24 in medical expenses incurred between April 2019 and July 2019.

### b. Rawlings Group Subrogation Lien

Plaintiff seeks reimbursement for a portion of a subrogation payment recovered on Wellmark's behalf by the Rawlings Group ("Rawlings"). Rawlings is a third-party bill-collecting company with which Wellmark contracts to pursue its subrogation claims. (DN 37, at PageID # 174.) Following Plaintiff's June 2018 motorcycle accident, Plaintiff pursued a personal injury claim against another motorist and secured a settlement from the motorist's insurance carrier. (*Id.*) Rawlings then made a subrogation claim on Wellmark's behalf to recover payments made for Plaintiff's medical expenses. (*Id.*) Plaintiff ultimately paid $6,924.71 to satisfy Wellmark's subrogation claim. (*Id.*, at PageID # 175.)

Plaintiff argues that his subrogation obligation to Wellmark should be subject to his $6,850 deductible and maximum out-of-pocket expenses. (DN 37, at PageID # 175-75.) Plaintiff reached his deductible for the 2019 year through $3,238.98 charged for medical treatment for Plaintiff's son and $3,611.02 charged for Plaintiff's medical treatment. (DN 37-2, at PageID # 186.) Plaintiff argues that "by requiring [him] to repay the entire subrogation lien, the Defendants have violated their own policy's maximum out-of-pocket limit for [Plaintiff] and his children." (*Id.*)

In response, Defendants cite to the policy language conferring upon Wellmark a right of subrogation and argues that "Plaintiff is unable to identify any language in the policy stating that subrogation amounts should count towards the deductible and maximum family out-of-pocket amounts." (DN 40, at PageID # 206-08.) Defendants further argue that the subrogation payment cannot be considered an out-of-pocket cost because it was a reimbursement from the tortfeasor in his accident to Wellmark for expenses for which Plaintiff was not required to pay. (*Id.*, at PageID # 208.) In the alternative, Defendants argue that even if Wellmark's subrogation rights were subject to Plaintiff's deductible and maximum out-of-pocket expenses, they should not be required to compensate Plaintiff because it had no subrogation rights and had no involvement in Rawlings's pursuit of the subrogation lien on Wellmark's behalf. (*Id.*)

In reply, Plaintiff reiterates his position that the subrogation payment ought to be considered an out-of-pocket expense, subject to the $6,850 limit. (DN 42, at PageID # 265.) Addressing the question of why Defendants are liable for a payment Plaintiff made to Wellmark, Plaintiff points to the same argument he made regarding Defendants' liability for the VA lien, namely that the employer is ultimately responsible for a beneficiary's medical bills when it uses a self-funded ERISA plan. (*Id.*)

The Court finds that as a matter of law, Plaintiff is not entitled to recover the amount he paid to settle the Rawlings lien. Plaintiff has presented no evidence connecting Rawlings's enforcement of Wellmark's subrogation rights to any alleged FMLA violation by Defendants. Instead, Plaintiff merely restates his legal argument that "the employer bears the financial risk for any unpaid medical bills incurred by a beneficiary of a self-funded ERISA plan that the insurer refuses to pay." (DN 42, at PageID # 265.) The Court need not address Plaintiff's contention; it is a red herring. This is not an action to collect outstanding amounts owed under the policy.

Plaintiff has only alleged: (1) FLMA interference, which requires a plaintiff to prove "the employer denied the employee FMLA benefits to which she was entitled" *Killian*, 454 F.3d at 556; and (2) FLMA retaliation, which requires a plaintiff to prove "a causal connection between the protected FMLA activity and the adverse employment action." *Donald*, 667 F.3d at 761. For their part, Defendants say that they played no role in pursuing Wellmark's subrogation rights, a fact that Plaintiff does not dispute. (DN 40, at PageID # 208.) Based on this undisputed fact, no reasonable jury could find that the subrogation lien arose out of the FMLA claim. Therefore, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment with respect to the $3,685.73 Plaintiff seeks to recover for part of his settlement of the Rawlings lien.

### c.  Metro Specialty Surgery Center Lien

Plaintiff seeks reimbursement for his payment of $1,405.55 to Metro Specialty Services Center ("MSSC") for a portion of the cost of his January 18, 2019 elbow surgery. (DN 37, at PageID # 176-77.) Wellmark settled the remainder of the lien and attributed the $1,405.55 to Plaintiff's deductible. (*Id.*) Plaintiff believes that he had already met his maximum out-of-pocket limit by the time he received the MSSC charges and argues that Defendants should be required to reimburse the amount he paid. (*Id.*, at PageID # 176-77.) In response, Defendants state that the $1,405.55 factored into the $3,611.02 attributed to Plaintiff's deductible for the year, and that Plaintiff was not required to pay anything more than the limit. (DN 40, at PageID # 208.) Defendants argue that they "should not be made to pay for amounts that are Plaintiff's responsibility under the terms of the applicable policy." (*Id.*)

The Court finds that as a matter of law, Plaintiff is not entitled to recover the amount paid to settle the MSSC lien. Plaintiff asserts that he is entitled to recover this amount under 29 U.S.C.

2617(A)(1)(a), the section of the FLMA proscribing interference with an employee's FLMA rights.  (DN 37, at PageID # 176.)  Plaintiff has presented no evidence connecting Wellmark's attributing the amount of the lien to Plaintiff's yearly deductible to any alleged FLMA violation by Defendants.  Instead, Plaintiff merely "incorporates by reference" the same deficient argument he made to support of his claim to recovery for the Rawlings lien.  (DN 42, at PageID # 266.)  This is insufficient to meet Plaintiff's burden of showing that Defendants "denied [Plaintiff] FMLA benefits to which []he was entitled." *Killian*, 454 F.3d at 556. *See supra* Part III.c.

On the other hand, there are grounds to award summary judgment on this issue to Defendants.  It is undisputed that Plaintiff was insured when he received treatment from MSSC, that Wellmark covered a portion of the cost of Plaintiff's treatment, and that Wellmark attributed the remaining costs to Plaintiff's deductible.  (DN 37, at PageID # 176-77; 37-4, at PageID # 191.)  To dispute that this coverage decision was not an act of interference with Plaintiff's rights, Defendants proffer that the decision merely "require[ed] Plaintiff to meet his deductible."  (DN 40, at PageID # 208.)  The Court will construe Plaintiff's argument that he had already met his deductible as an argument for pretext.  Even in doing so, the Court finds that Plaintiff has not established pretext.

Plaintiff says that "[a] carful study" of Plaintiff's 2019 member responsibility report prepared on May 3, 2020 reveals that he was made to pay more than the maximum family out-of-pocket limit.  (DN 37, at PageID # 176.)  The Court's review of the document shows a charge listed for Plaintiff's expenses dated January 18, 2019 in the amount of $43,534.17, reduced to $7,736.86 through $35,797.31 in network savings.  (DN 37-2, at PageID # 185.)  $5,355.96 is listed as the amount paid by Wellmark, and $2,380.90 was listed as Plaintiff's deductible.  (*Id.*)  This amount factored into Plaintiff's total yearly deductible of $3,611.02.  (*Id.*, at PageID # 185-

86.) The report summarizes totals for medical expenses for each member on the plan, which added up to $7,456 attributed to Plaintiff, which included his $3,611.02 yearly deductible, a $3,238.98 total yearly deductible incurred by his son, and $606 incurred by another plan member. (*Id.*, at PageID # 186.) This amount exceeds Plaintiff's maximum family out-of-pocket limit by $606. However, the evidence does not show that Plaintiff was required to pay the total amount. The total amount included the $2,380.90 deductible for Plaintiff's MCCS treatment Plaintiff was only charged $1,405.55, (DN 37-3), reducing Plaintiff's overall cost by $975.35 and placing Plaintiff's total out-of-pocket costs below his maximum limit. Plaintiff has offered no additional evidence to show that attributing the MCCS charge to Plaintiff's deductible was a pretext for an FLMA violation nor has he offered anything otherwise to dispute Defendants' proffered explanation. Therefore, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment with respect to the $1,405.55 Plaintiff seeks to recover for his payment of the MCCS lien.

## IV. ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for partial summary judgment (DN 37) is **DENIED**.

2. Defendants' motion for summary judgment (DN 40) is **GRANTED in part and DENIED in part** as set forth herein.

3. On or before **July 16, 2021**, the Parties shall jointly file a report informing the Court as to (1) whether this order impacts the Parties' settlement agreement; (2) whether the Parties will require further action by the Court to address the remaining disputed lien amounts; and (3) how the Parties wish to proceed.

Colin H Lindsay, Magistrate Judge

United States District Court

June 25, 2021

cc:  Counsel of record